Barbara L. SIMMONS and Marvin Sam
Clayson, Plaintiffs and Appellants,

v.

FARMERS INSURANCE GROUP, d/b/a
Farmers Insurance Exchange; Randall
L. Tuckett (agent); and John Does 1
through 5, Defendants and Appellees.

No. 930289–CA.

Court of Appeals of Utah.

June 30, 1994.

James G. Clark, Provo, for appellants.

M. Dayle Jeffs, Provo, for appellees.

Before BENCH, GREENWOOD, and JACKSON, JJ.

## OPINION

JACKSON, Judge:

Barbara L. Simmons and Marvin Sam Clayson appeal the trial court's grant of summary judgment regarding coverage provided by an insurance policy purchased by Simmons from Farmers Insurance Exchange (Farmers). We affirm.

### FACTS

Simmons was involved in a motor vehicle accident on May 11, 1985. She was pulling a horse trailer borrowed from a friend, Marvin Clayson, and the trailer was damaged in the accident. Simmons submitted a claim to Farmers for the damage to the horse trailer. Upon review of the insurance policy, Farm-

ers determined the collision damages were limited to $500, which it paid to Simmons. Clayson subsequently sued Simmons for damage to his horse trailer. Simmons requested that Farmers defend her in the lawsuit. Farmers declined, and Simmons took no further action in the suit, allowing a default judgment to be entered against her.

Clayson and Simmons then joined together to file an action against Farmers claiming breach of contract, fraud, and negligence. Farmers filed a motion for summary judgment "for all claims" but did not address the fraud and negligence claims in its motion. The trial court granted the motion, and Clayson and Simmons appealed to the supreme court.[1] Farmers filed a motion to dismiss the appeal because the summary judgment was not a final order or judgment as to all claims. Simmons filed an objection to the motion, stating that all issues had been resolved. The supreme court denied summary disposition, stating that the issue should be addressed in the briefing, and transferred this case to the court of appeals.

### ISSUES

Simmons asserts that the trial court (1) failed to dispose of her fraud and negligence claims, (2) incorrectly interpreted the insurance policy in ruling that it does not provide full coverage for Clayson's horse trailer, and (3) erred in not requiring Farmers to defend her against Clayson's suit for damage to his trailer. Additionally, Simmons claims Farmers breached the covenant of good faith and fair dealing by issuing collision coverage with a $500 deductible on a vehicle valued at $350 and by refusing to defend Simmons.

### ANALYSIS

#### Dismissal of All Claims

■ In its motion to dismiss Simmons's appeal for lack of appellate jurisdiction, Farmers urged that the appeal was not from a final appealable order because claims against Randall Tuckett, the insurance agent

---

1. Farmers alleges Clayson does not have standing to pursue this appeal because Simmons never assigned Clayson the claims against Farmers.

Because we affirm the trial court's decision, we need not address this issue.

for Farmers, remained pending in the trial court. In response, Simmons pointed out that Tuckett never became a party to this action because he was never served with a summons and complaint. Simmons went on to state that the summary judgment resolved all claims asserted against Farmers.

Somewhat disingenuously, Simmons now contends that her claims regarding fraud and negligence remain unlitigated. If that were the case, we would not have jurisdiction to hear the appeal because the summary judgment was never certified pursuant to Rule 54(b) of the Utah Rules of Civil Procedure. However, in its motion for summary judgment, Farmers clearly moved for judgment "against the plaintiffs for all claims asserted against it in this action." This motion was granted by the trial court. Thus, the appeal is from a final appealable order. Simmons's contention that she still has unlitigated claims against Farmers is without merit.

## Policy Coverage

Simmons asserts that the language of the insurance policy provides full coverage for the damage to the horse trailer under both the liability and collision portions of the policy. However, Farmers claims that the policy exclusions and limitations completely exclude coverage under the policy's liability portion and limit coverage under the collision portion to $500.

■ Generally, the interpretation of insurance policy language presents a question of law, which we review for correctness. *Nielsen v. O'Reilly,* 848 P.2d 664, 665 (Utah 1992). The terms of the policy should be interpreted according to their usually accepted meanings and should be read as a whole, to give effect to all of the policy provisions. *Id.; accord Gee v. Utah State Retirement Bd.,* 842 P.2d 919, 921 (Utah App.1992) (appellate courts interpret clear and unambiguous policy terms in accordance with their plain and ordinary meaning). Policy language is ambiguous if it is not " 'plain to a person of ordinary intelligence and understanding, viewing the matter fairly and reasonably, in accordance with the usual and natural meaning of the words, and in the light of existing circumstances, including the purpose of the policy.' " *Nielsen,* 848 P.2d at 666 (quoting *LDS Hosp. v. Capitol Life Ins. Co.,* 765 P.2d 857, 858–59 (Utah 1988)).

■ We agree with Farmers that the liability portion of the policy provides no coverage for damage to the borrowed horse trailer and that the collision portion of the policy limits coverage to $500. The liability policy provides coverage for "property damage arising out of the ... use of a ... utility trailer." "Utility trailer" is defined by the policy as "a vehicle designed to be towed by a private passenger car and includes a farm wagon or farm implement while towed by a private passenger car or utility car. It does not include a trailer used as an office, store, display or passenger trailer." We believe the horse trailer fits within the definition of a utility trailer under the policy because the trailer was clearly designed to be towed by a private passenger car and can fairly be characterized as a farm wagon or implement. Thus, the liability statement of coverage, standing alone, could be read as covering damage to the horse trailer. However, the exclusions to liability coverage prevent coverage for the borrowed trailer. Exclusion 7 states that liability coverage does not apply to "[d]amage to property owned or being transported by an insured person." The horse trailer was being transported by Simmons, the insured in this case. Further, Exclusion 8 provides that liability coverage does not extend to damage to property "in the charge of, an insured person ... not owned by that person." Simmons clearly did not own the horse trailer. Accordingly, the plain and ordinary language of the policy's exclusions to liability prevent coverage for damage to the horse trailer.

■ Further, the collision portion of the policy provides coverage for only $500, rather than full coverage for damage to the horse trailer as Simmons asserts. The collision coverage states that Farmers will "pay for loss to your insured car caused by collision." "Your insured car" is defined as including a "utility trailer not owned by or furnished or available for the regular use of you or a family member." Thus, as with the liability coverage, the general statement of collision

coverage appears to fully cover the damage to the horse trailer. However the "Limits of Liability" section of the policy's collision portion states that coverage is limited to the lowest of (1) the "actual cash value" of the damaged property, (2) the amount necessary to repair the property, or (3) "$500 for a utility trailer not owned by you or a family member." We believe this policy language plainly and unambiguously provides coverage but expressly limits that coverage to $500 on the horse trailer not owned by Simmons.[2]

## Duty to Defend

■ Simmons claims Farmers had a duty to defend her in the suit brought by Clayson to recover for damage to his horse trailer.[3] Farmers claims that because it paid Simmons the policy limits, it no longer had any duty to defend Simmons. The insurance policy provides that Farmers "will defend any claim or suit" for damages for which any insured person is legally liable because of property damage arising out of the use of a utility trailer. However, the policy also states that Farmers "will not defend any suit, or make additional payments, after we have paid the limit of liability for the coverage." We must consider whether the provision in Simmons's insurance policy allows Farmers to terminate its defense by paying the policy limit of $500 for the horse trailer.

■ Each case involving an insurer's promise to defend must be considered independently on the basis of the particular language of the insurance policy at issue. *Gross v. Lloyds of London Ins. Co.*, 121 Wis.2d 78, 358 N.W.2d 266, 270 (1984). Language limiting an insurer's duty to defend an insured must be clear, unambiguous, and sufficiently conspicuous in order to give proper notice to the insured of the limitations on the duty to defend. *See Johnson v. Continental Ins. Cos.*, 202 Cal.App.3d 477, 248 Cal.Rptr. 412, 414–15 (1988).

Simmons's policy stated that Farmers "will not defend any suit, or make additional payments, after we have paid the limit of liability for the coverage." We believe this language clearly and unambiguously limits Farmers's duty to defend Simmons once it paid the $500 policy limit.[4] *See Heredia v. Farmers Ins. Exch.*, 228 Cal.App.3d 1345, 279 Cal.Rptr. 511, 516 (1991) (court found identical policy language unambiguously provided that insurer was not obligated to provide defense after paying policy limit); *Johnson*, 248 Cal.Rptr. at 414 (provision stating that insurer was not obligated to "pay any claim or judgment" or "defend any claim or lawsuit" when insurer's payments have reached limit of coverage was found to be "unambiguous, plain and clear").

■ The protection afforded to an insured against the contingency of the insurer terminating its duty to defend is that, in every case, the insurance company is held to a duty to discharge its policy obligations in good faith, including its duty to defend the insured against claims covered by the policy. *See Broadwater v. Old Republic Sur.*, 854 P.2d

---

**2.** Simmons attempts to characterize the trailer as part of her insured car, and therefore subject to full coverage. The collision provision provides coverage for loss to "your insured car." The policy defines "your insured car" as including an automobile with a utility trailer attached to it. Simmons asserts that if the trailer is attached to the insured car, it is no longer a utility trailer subject to the $500 limitation, but an "insured car" subject to full coverage. We agree with the trial court that Simmons's manipulation of these terms is unreasonable and contradictory to the policy's plain meaning.

**3.** Generally, insurers have a duty to defend any complaint alleging facts which, if proven, would render the insurer liable for indemnification of its insured. *Viking Ins. Co. v. Hill*, 57 Wash.App. 341, 787 P.2d 1385, 1388 (1990). The duty to defend is broader than the duty to indemnify because it is antecedent to and independent of the duty to indemnify. *Deseret Fed. Savings & Loan Ass'n v. United States Fidelity & Guar. Co.*, 714 P.2d 1143, 1146 (Utah 1986); *Barber v. Farmers Ins. Exch.*, 751 P.2d 248, 253 (Utah App.1988). An insurer denying a duty to defend must establish that the claims fall outside the coverage of the policy or the claims are exempted from coverage. *See Deseret*, 714 P.2d at 1146–47. The parties do not dispute that Simmons's complaint obligated Farmers to defend Simmons. However, Farmers contends its duty was terminated because of its payment of policy limits to Simmons.

**4.** Simmons asserts that Farmers's claim adjuster admitted that Farmers should have provided a defense to Simmons. However, the adjuster's admission does not change the plain language of the policy.

527, 535 (Utah 1993); *Beck v. Farmers Ins. Exch.*, 701 P.2d 795, 801 (Utah 1985); *Campbell v. State Farm Mutual Auto. Ins. Co.*, 840 P.2d 130, 137 (Utah App.), *cert. denied*, 853 P.2d 897 (Utah 1992); *accord Heredia*, 279 Cal.Rptr. at 518 (the duty to defend ends with the policy limits, assuming no prejudice attaches to the insured); *Johnson*, 248 Cal. Rptr. at 417 (if insurer tenders its policy limits in response to the demand of its insured prior to the initiation of litigation arising from an accident, insurer generally has no further duty to defend); *Kantack v. Progressive Ins. Co.*, 618 So.2d 494, 497 (La.Ct. App.1993) (an insurer must make every effort to avoid prejudicing its insured by the timing of its withdrawal).

In this case, Farmers paid the policy limit of $500 to Simmons before any action was brought by Clayson. In fact, Farmers paid the policy limit within twelve days after receiving Simmons's demand for payment. Clayson's suit was filed ten months after Simmons received payment. *See Johnson*, 248 Cal.Rptr. at 417 (stating that because insurer paid policy limits within two weeks of insured's demands and litigation began some six months thereafter, court found no further duty to defend). Farmers did not abandon Simmons mid-course in litigation, and Simmons suffered no prejudice because Farmers refused to defend her. Having paid the limits of liability in settlement of her claim, Farmers's duty to defend Simmons came to an end.

### Duty of Good Faith

■ Simmons also asserts that Farmers breached the constructive duty of good faith and fair dealing when it issued her an insurance policy with a $500 deductible on a car valued at $350 and when it failed to defend Simmons in the suit brought by Clayson. Because these issues were not raised below, we will not consider them on appeal. *See Ong Int'l (U.S.A.) Inc. v. 11th Ave. Corp.*, 850 P.2d 447, 455 (Utah 1993); *Smith v. Iversen*, 848 P.2d 677, 677 (Utah 1993); *Wade v. Stangl*, 869 P.2d 9, 11 (Utah App.1994); *Jenkins v. Weis*, 868 P.2d 1374, 1380 (Utah App.1994).

### CONCLUSION

Simmons's appeal was from a final appealable order, thus we have jurisdiction to hear this appeal. The trial court properly determined the insurance policy provided $500 collision coverage for damage to the horse trailer. Further, the trial court also properly refused to require Farmers to defend Simmons against Clayson's suit because it had already paid the policy limits to Simmons. We do not address the issues concerning Farmers's duty of good faith and fair dealing because they were not raised below. Accordingly, we affirm.

BENCH and GREENWOOD, JJ., concur.