No. 03-432

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 241

IN RE THE MARRIAGE OF

GLENN N. KOLCZAK,

   Petitioner and Appellant,

 and

FAYE KOLCZAK,

   Respondent and Respondent.

APPEAL FROM: District Court of the Sixteenth Judicial District,
In and for the County of Rosebud, Cause No. DR 90-78,
The Honorable Joe L. Hegel, Judge presiding.

COUNSEL OF RECORD:

   For Appellant:

      John Hollow, Attorney at Law, Helena, Montana

   For Respondent:

      Allen Beck, Attorney at Law, Zortman, Montana

Submitted on Briefs: November 13, 2003

Decided: September 2, 2004

Filed:

_____
Clerk

Justice Jim Regnier delivered the Opinion of the Court.

¶1     Glenn Kolczak sought a ruling from the District Court that he no longer had an obligation to provide health insurance or to pay medical bills for his ex-wife, Faye Kolczak, pursuant to their written Stipulation As to Medical Insurance.  The District Court concluded that the issue is *res judicata*.  We affirm the District Court.

¶2     The sole issue we address on appeal is whether the District Court erred in concluding that the 1994 determination that Glenn is obligated to provide medical insurance for Faye is *res judicata*.

## BACKGROUND

¶3     The District Court dissolved Glenn and Faye's marriage by Decree of Dissolution on July 30, 1990.  The Decree of Dissolution adopted the parties' June 19, 1990, Property Settlement, Child Custody, and Support Agreement (Agreement).  Among other things, the Agreement provided that Glenn "maintain coverage for the benefit of the wife under his health insurance provided to him by his employer, and husband will be responsible for any additional payment of premium necessary to maintain wife under the described insurance."  The Agreement also provided that "It is agreed that no maintenance payment for wife is required."

¶4     Following the Decree of Dissolution, Glenn maintained health insurance coverage for Faye through the policy provided to him as a benefit of his employment.  COBRA limits the amount of time an employee may keep a former spouse on his or her employer-provided health insurance policy to three years.  This meant that Faye could only be covered on Glenn's employer-provided policy until June 30, 1993.  At some point in 1993, Faye went

2

to see a doctor and discovered she no longer had health insurance coverage.

¶5     On March 7, 1994, Glenn filed a motion seeking to modify the Agreement so he no longer would be required to maintain coverage for Faye under his health insurance provided to him by his employer. Glenn characterized the requirement to provide health insurance as a maintenance provision. He claimed it should no longer apply due to changes in circumstance. Before the District Court ruled on Glenn's motion, the parties negotiated an oral stipulation whereby Glenn agreed to obtain and continue separate health insurance coverage for Faye. Pursuant to the oral stipulation, Faye submitted her proposed Findings of Fact, Conclusions of Law and Order, which the District Court signed on May 26, 1994.

¶6     Glenn and Faye entered into a written Stipulation As to Medical Insurance (Stipulation) on August 16, 1994, in which Glenn agreed to pay for Faye's health insurance under a new policy. The District Court subsequently adopted the stipulation. The relevant portions of the Stipulation provide that (1) the District Court's Findings of Fact, Conclusions of Law and Order filed May 26, 1994, require Glenn to continue to provide medical insurance coverage for Faye; and (2) that Faye would accept a Blue Cross policy with a $2500 deductible and 100% medical coverage thereafter, but with no dental or optometric coverage, in exchange for Glenn's agreement to pick up the entire $2500 deductible. No termination date was specified. Glenn then resumed his coverage of Faye's health insurance as provided for in the Stipulation. The District Court never had an opportunity to rule on Glenn's "changes in circumstance" argument. However, we note that in the Decree as well as in the May 26, 1994 Order, Glenn's obligation to pay for Faye's medical coverage was characterized as a property disposition rather than maintenance.

3

¶7    Glenn retired from his employment in March of 2001. In July of that year he had an attorney attempt to change the Blue Cross policy to a less expensive HMO. Glenn continued to pay Faye's medical insurance and bills for seven months after his retirement, until October of 2001. On November 21, 2001, Faye received notice that her insurance coverage through Blue Cross had been terminated as of November 2001. Thereafter Faye filed a Petition for Contempt and Request for Hearing, asking the District Court to hold Glenn in contempt, require him to pay her outstanding medical bills, and resume her health insurance coverage pursuant to the Stipulation. Glenn sought a ruling from the District Court that he no longer had an obligation to provide health insurance or to pay medical bills for Faye under the parties' Stipulation. Glenn argued that pursuant to the parties' Decree of Dissolution, his liability to provide Faye with medical insurance should have terminated when he could no longer provide it through his employer, which, pursuant to COBRA, was limited to three years from the date the marriage was dissolved.

¶8    The District Court disagreed with Glenn, finding that his effort to end coverage was *res judicata*. The District Court ordered Glenn to continue to provide Faye with medical insurance coverage and medical expense payments as provided in the Stipulation and to pay all of Faye's medical expenses not paid by insurance incurred on or after entry of the Decree of Dissolution. Glenn appeals from the District Court's Order.

STANDARD OF REVIEW

¶9    We review a District Court's conclusions of law to determine whether the court's interpretation of the law was correct. *Marriage of Kovash* (1995), 270 Mont. 517, 521, 893 P. 2d 860, 863.

4

¶10 Did the District Court err in concluding that the 1994 determination that Glenn is obligated to provide medical insurance for Faye is *res judicata*?

¶11 *Res judicata* bars a party from relitigating a matter that the party has already had the opportunity to litigate. *Watkins Trust v. Lacosta*, 2004 MT 144, ¶ 26, 321 Mont. 432, ¶ 26, 92 P.3d 620, ¶ 26. The doctrine of *res judicata* applies if the following four elements have been satisfied: (1) the parties or their privies are the same; (2) the subject matter of the present and past actions is the same; (3) the issues are the same and relate to the same subject matter; and (4) the capacities of the persons are the same in reference to the subject matter and to the issues between them. *Watkins Trust*, ¶ 27.

¶12 Glenn argues that at the time the District Court entered its Findings, Conclusion and Orders in 1994, Glenn had not yet retired from employment and therefore did not have the right to terminate the insurance that was based on his employment. Because the issue of the duration of Glenn's obligation to pay Faye's medical insurance was not addressed at that time, Glenn argues it is not *res judicata*.

¶13 The District Court concluded that although Glenn did not raise the issue of the effect of COBRA in 1994, he could have. In 1994, rather than argue that his obligation to pay for Faye's medical coverage be limited by COBRA or the Decree, he argued that the health insurance provision was in the nature of maintenance and should be deleted in the face of changed circumstances. The District Court stated that nothing prevented Glenn from arguing COBRA at that time, and surmised that had he done so the outcome may have been different.

¶14 We agree with the District Court. The doctrine of *res judicata* bars not only issues

that were actually litigated, but also those that could have been litigated in a prior proceeding. *Mills v. Lincoln County* (1993), 262 Mont. 283, 286, 864 P.2d 1265, 1267. A party should not be able to litigate a matter that the party already had the opportunity to litigate. *Sheffield Ins. v. Lighthouse Properties* (1992), 252 Mont. 321, 324, 828 P.2d 1369, 1371. This notion arises from public policy designed to prevent endless piecemeal attacks on previous judgments. *Wellman v. Wellman* (1982), 198 Mont. 42, 45-46, 643 P.2d 573, 575. Glenn could, and perhaps should, have raised the COBRA issue relating to the duration of his obligation in 1994. He did not do so. Instead, he entered into a stipulation to continue to provide insurance coverage with no termination date and the District Court entered an order based on the stipulation. Glenn is barred by the doctrine of *res judicata* from raising the COBRA issue now.

¶15    We affirm the District Court.


                                                    /S/ JIM REGNIER

We Concur:

/S/ KARLA M. GRAY
/S/ W. WILLIAM LEAPHART
/S/ JAMES C. NELSON
/S/ JOHN WARNER


Justice Patricia O. Cotter concurs.


¶16    I concur in the result of our Opinion, although not necessarily with the rationale advanced by the Court.

8

¶17 An order requiring one spouse to pay for health insurance for the benefit of the other spouse could be considered an order of maintenance, *or* it could be construed to be part of property disposition. Here, the court characterized it as property disposition in its 1994 Order, and Glen failed to object to this characterization. This being so, it was incumbent upon Glenn, in seeking to modify the order of property disposition, to either secure Faye's agreement to the modification, or establish ". . . the existence of conditions that justify the reopening of a judgment under the laws of this state." Section 40-4-208(3)(b), MCA. I would conclude that Glenn both failed to identify this as the appropriate test, and failed to satisfy its stringent requirements, and would affirm on that basis. I would not reach the *res judicata* analysis.

/S/ PATRICIA O. COTTER

Justice Jim Rice dissenting.

¶18 I dissent.

¶19 First, the Court confuses two of Glenn's arguments. The Court concludes it is unnecessary to reach the merits of Glenn's claim because he "should[] have raised the COBRA issue" in 1994 and he is "barred by the doctrine of *res judicata* from raising the COBRA issue now." *See* ¶ 15. However, that conclusion does not resolve the case. Glenn's COBRA issue was just one of several arguments raised by Glenn, both in the District Court and before this Court. His primary argument is that the parties' settlement agreement cannot be interpreted–without regard to COBRA–as requiring him to provide health insurance to Faye after cessation of his employment and for her lifetime.

¶20    *Res judicata* should not preclude Glenn's primary argument.  The District Court

stated, erroneously, as follows:

> The Court agrees that the Court's 1994 Findings, Conclusions and Orders are *res judicata* of the issue now before the Court.  Although Glenn's previous attorney, John Houtz, did not raise the issue of the effect of the federal COBRA law, the question [was] whether Glenn should have to continue to provide such medical coverage *after the coverage was no longer available through his employer.*   [Emphasis added.]

However, this was *not* the issue in 1994.  Rather, Glenn moved for modification of the

original agreement to eliminate the insurance requirement on the grounds of *changed*

*circumstances*:  that Faye was living with another party who was supporting her and that the

parties' child was no longer residing with Faye.  His employment had nothing to do with his

motion for modification filed March 7, 1994.

¶21    The issue now is whether the agreement imposes a lifetime obligation upon Glenn to

provide insurance to Faye following the cessation of his employment.  This issue was not

raised by either party or addressed by the District Court in 1994.  Further, because Glenn

was employed at that time, the issue was arguably not then ripe, and I would not apply *res*

*judicata* to preclude Glenn's raising of the issue now.  Glenn's retirement raises an important

issue regarding the original agreement's meaning.

¶22    The parties' original agreement required that Glenn "shall maintain coverage for the

benefit of the wife under his health insurance provided to him by his employer . . . ."   The

orders entered by the District Court in 1994 did not address the employment issue, but

simply concluded that Glenn's motion for modification, based upon changed circumstances,

was without merit, and affirmed the terms of the original agreement, stating: "[Glenn] shall

10

obtain medical insurance for [Faye] *as required by the Property Settlement, Child Custody and Support Agreement . . . .*" (Emphasis added.)  The orders did not revise Glenn's original insurance obligation.  They reaffirmed it against a requested modification.

¶23     In this matter, the District Court concluded that the unwritten "gist" of the 1994 orders was to impose a continuing obligation upon Glenn to provide insurance to Faye that was not limited to the time of his employment, holding that "[a]lthough not explicitly stated, it is implicit that Glenn should continue to provide such medical coverage for her lifetime."  This conclusion is incorrect in two respects.  First, the 1994 orders imposed no new obligation upon Glenn, but, rather, re-imposed the original obligation, which was to maintain insurance for Faye as "provided to him from his employer."  Second, the agreement should not be interpreted to implicitly impose a post-employment, lifetime obligation upon Glenn, when such a far-reaching requirement was not mandated by the agreement, and when the obligation as stated was linked to his employment.

¶24     I would not by implication impose an obligation upon Glenn and, following his death, upon Glenn's estate, to provide insurance for Faye for the remainder of her life.  Therefore, I would reverse.

/S/ JIM RICE